UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

MICHAEL MELNITZKY,

               Plaintiff,

     - against -                06 Civ. 13526 (JGK)

HSBC BANK USA; FELIX PAI;       OPINION AND ORDER
CECIL LESSEE; MICHAEL MENDOLA;
JUSTICES JACQUELINE SILBERMAN; WALTER
TOLUB; JUDITH GISCHE; CHARLES RAMOS;
ANGELA MAZZARELLI; JUDGE JUDITH KAYE;
COURT OFFICER DUFF; SUPERVISING
OFFICER MAJOR FENNEL; CLERK IDA LEE;
VIRGINIA LOPRETO; ELIZABETH
BESOBRASOW; and JOHN DOE SECRET
AUCTION GALLERY,

               Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

    The plaintiff, appearing pro se, brings this amended
complaint pursuant to 42 U.S.C. §§ 1983 and 1985 alleging
violations of his rights to due process and equal protection of
the laws along with various state law causes of action.  This
dispute arises from events surrounding the plaintiff's divorce
proceedings, which have continued in the New York State courts
from about 1994 to the present.  Essentially, the plaintiff
challenges the manner in which the state courts determined that
certain of the plaintiff's property constituted marital assets and
the method in which that property was allegedly seized from safe
deposit boxes to be sold at private auction.

The plaintiff has sued a number of defendants, including numerous state court judges who were involved in the plaintiff's divorce proceedings in state court, the bank where the safe deposit boxes at issue in this action were maintained, employees of that bank, the plaintiff's former wife, his ex-wife's attorney, various court personnel, and the auction gallery involved in the alleged sale of the property. This Court has already dismissed the majority of the defendants named in the plaintiff's amended complaint. See Melntizky v. HSBC, Bank USA, No. 06 Civ. 13526 (JGK), 2007 WL 195239 (S.D.N.Y. Jan. 24, 2007); see also Melntizky v. HSBC, Bank USA, No. 06 Civ. 13526 (JGK), 2006 WL 3728598 (S.D.N.Y. Dec. 15, 2006). In a related action, Judge Stein dismissed with prejudice a complaint against a similar—and largely overlapping—set of defendants. See Melntizky v. Lopreto, No. 06 Civ. 13206 (SHS), 2006 WL 3500016 (S.D.N.Y. Dec. 4, 2006).

In this action, only five defendants remain: HSBC Bank USA and three individual employees of HSBC, Felix Pai, Cecil Lessey, and Michael Mendola (collectively "HSBC"), and a defendant named in the amended complaint as Court Officer Duff.[1] HSBC moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the amended complaint and seeks an order enjoining the plaintiff from filing further actions in the Southern District of

---

[1] Both the plaintiff and HSBC have overlooked the fact that Court Officer Duff remains a defendant in this action.

New York without prior leave of court.  The plaintiff cross moves for summary judgment and also seeks a preliminary injunction.

For the reasons explained below, HSBC's motion is granted, and the plaintiff's motions are denied.  In addition, the Court will dismiss the plaintiff's claims against Court Officer Duff without prejudice.

I.

The following background facts are drawn from the pleadings, affidavits, submissions on file, and other matters of public record.

The plaintiff's amended complaint asserts that HSBC conspired and consorted with New York state authorities, namely the various judges involved in the plaintiff's matrimonial action, and other private individuals, such as the plaintiff's ex-wife and his ex-wife's attorney, to violate his rights to due process and equal protection of the laws.

The plaintiff, Mr. Melnitzky, was married in 1984 and divorced in 1998.  During the divorce proceedings, a dispute arose over the contents of property maintained by the plaintiff in various safe deposit boxes.  The issue was whether the property in the safe deposit boxes constituted marital assets subject to equitable distribution under New York law.  The plaintiff argued, and continues to argue, that the contents of the safe deposit

boxes—at least in part—were acquired prior to the marriage in 1984 and thus were the personal property of the plaintiff and not marital assets.

The parties presented this dispute to Justice Walter B. Tolub of the New York County Supreme Court.  <u>Melntizky v. Melntizky</u>, Supreme Court, New York County, Index No. 300220/94.  The plaintiff resisted his wife's efforts to obtain court authorization to open the safe deposit boxes.  Despite the plaintiff's efforts, on April 15, 1998, Justice Tolub found the plaintiff in contempt of a prior court order and ordered the safe deposit boxes to be opened by force and inventoried.  The order provided that "the safe deposit boxes shall be opened by an officer of the respective banks," specifically referencing safe deposit boxes that the plaintiff maintained at a branch of HSBC (what was then Marine Midland Bank).  (<u>See</u> Order of Justice Tolub, dated Apr. 15, 1998 ("4/15/98 Order of J. Tolub") at 1–2, attached as Ex. B to Aff. of Michael Mendola, dated Jan. 31, 2007 ("Mendola Aff.").)  The plaintiff was not permitted to attend the inventory, but he was allowed to send a representative in his stead.[2]

During the inventory of the safe deposit boxes at HSBC, which occurred around April 1998, the plaintiff alleges that HSBC prevented his representative from attending the inventory in

---

[2] In a prior order, dated March 12, 1998, Justice Tolub explained that "[s]ince [Mr. Melnitzky] refuses to cooperate with the opening of the boxes the order shall specifically provide that he is to be excluded during the openings.  He may however send an agent in his place to be present during the inventory."  (Ex. A to Mendola Aff.)

violation of Justice Tolub's order.  The plaintiff also alleges
that various items have disappeared from the boxes, apparently
some time between the initial inventory of the safe deposit boxes
and present.

After the inventory of all of the boxes was complete, Justice
Tolub conducted a trial to determine, among other things, whether
the contents of the safe deposit boxes constituted marital assets.
According to the plaintiff, Justice Tolub refused to consider his
evidence that allegedly proved that much of the property at issue
was acquired prior to his 1984 marriage, despite having previously
assured the plaintiff that he could submit the evidence along with
any post-trial memoranda.  Without considering this evidence,
which consisted of about 250 purchase invoices that the plaintiff
included with his post-trial memorandum, Justice Tolub found that
much of the property contained in the safe deposit boxes was
marital property, subject to equitable distribution.  (See
Decision of Justice Tolub, dated Dec. 3, 1998 ("12/3/98 Decision
of J. Tolub"), attached as Ex. C to Mendola Aff.)  HSBC was not a
party to the matrimonial action, and the plaintiff has not alleged
that HSBC played any role in the court's decision that the
contents of the safe deposit boxes constituted marital property.

Justice Tolub then entered an equitable distribution money
judgment on November 18, 1999.  (Ex. D to Mendola Aff.)  The
plaintiff appealed the judgment to the Appellate Division, First

Department, which affirmed the judgment.  See Melnitzky v.

Melnitzky, 726 N.Y.S.2d 649 (App. Div. 2001).  With respect to

Justice Tolub's evidentiary ruling, the court concluded:

> Defendant's contention that the trial court did not
> permit him to establish that the assets located in
> numerous safe deposit boxes were his separate, pre-
> marital property is belied by the record.  Indeed,
> defendant, over a period of years attempted to prevent
> the inventory of the subject safe deposit boxes and did
> not see fit to present the trial court with the evidence
> he claims demonstrates that the property at issue is his
> separate, pre-marital property until after the
> conclusion of the trial of the financial issues raised
> by the parties' divorce.  Under all the circumstances,
> the trial court properly rejected defendant's late
> proffer and found that defendant had not met his burden
> to establish that the disputed property in the safe
> deposit boxes was his, and not properly part of the
> marital estate.

Id. at 650.

The plaintiff's litigation over the safe deposit boxes,

however, did not end there.  Instead, as revealed by numerous

reported and unreported decisions, the plaintiff has repeatedly

raised the issue of the safe deposit boxes in the New York State

courts, suing various defendants on a variety of legal theories.

The state courts, in turn, have repeatedly rejected the

plaintiff's complaints as time barred and precluded.  In short,

none of the plaintiff's litigation efforts to challenge issues

related to the inventory of the safe deposit boxes has been

successful.[3]

---

[3]  See, e.g., Melnitzky v. LoPreto, 777 N.Y.S.2d 304 (App. Div.
2004) (affirming dismissal of complaint against ex-wife's attorney

In one such action, the plaintiff sued HSBC Bank USA.  On October 19, 2006, the Appellate Division affirmed a May 18, 2005 order of Justice Charles E. Ramos granting HSBC Bank USA's motion for summary judgment.  Melntizky v. HSBC Bank USA, 823 N.Y.S.2d 128 (App. Div. 2006).  The court explained:

> Plaintiff raises the identical issues raised and determined against him in the matrimonial action, specifically, the manner in which the inventory of the safe deposit boxes was conducted, and the respective rights of plaintiff and his ex-wife to the contents therein.  Although plaintiff couches his complaint in terms of defendant bank's breach of fiduciary duties as bailee, fraud, breach of contract, and aiding and abetting conversion, the gravamen of the action is that defendant bank, contrary to an order in the matrimonial action excluding plaintiff's attendance at the opening and inventorying of the boxes but permitting him to send a representative in his stead, improperly denied admittance to the representative.  However, any complaint plaintiff has regarding the opening and inventorying of the boxes was or could have been raised in the matrimonial action, and [is] therefore barred.

Id. at 128-29.  Based on this litigation, the plaintiff alleges that HSBC and Justice Ramos misused the principles of collateral estoppel and res judicata to bar his claims, given that Justice Tolub's 1998 rejection of his proffer of evidence denied him a

---

alleging that she "was complicit in an allegedly wrongful inventory of several safe deposit boxes..."); Melnitzky v. Besobrasow, 787 N.Y.S.2d 655 (App. Div. 2005) (affirming dismissal of complaint against the plaintiff's ex-wife arising from the inventory of the safe deposit boxes, which alleged claims of "conversion, theft, damage to property, fraud, abuse of process, willful concealment and destruction of evidence, collusion, prima facie tort and request for an accounting"); Melnitzky v. North Fork Savings Bank, 794 N.Y.S.2d 13 (App. Div. 2005) (affirming dismissal of complaint against bank challenging the bank's procedures "in conducting inventory of several safe deposit boxes used by [the plaintiff] to store what was previously determined to be marital property..."); Melnitzky v. Apple Bank for Savings, 797 N.Y.S.2d 470, 471 (App. Div. 2005) (same).

full and fair opportunity to litigate his claims.  (See Am. Compl. at 37.)

At present, the plaintiff is enjoined from commencing further litigation in the state courts related to his prior matrimonial action without prior leave of court.  See HSBC Bank USA, 823 N.Y.S.2d at 128; Apple Bank for Savings, 797 N.Y.S.2d at 471 ("In light of the continuous and vexatious nature of his litigation, we issue our injunction sua sponte." (collecting cases)).

Throughout this collateral litigation over issues related to the safe deposit boxes, the controversy surrounding the boxes continued in the underlying matrimonial action itself.  In an order dated July 1, 2004, Justice Gische, relying in part on the past orders of Justice Tolub, granted the request of the plaintiff's ex-wife to proceed with the auction and sale of the contents of the safe deposit boxes.  (See Ex. J to Mendola Aff.) In doing so, Justice Gische rejected the plaintiff's continued efforts to challenge Justice Tolub's past orders.

Early in 2006, the parties filed more motions in the matrimonial action related to the property in the safe deposit boxes.  On June 7, 2006, Justice Silberman issued an order that, among other things, denied the plaintiff's request for access to the safe deposit boxes "in accordance with numerous previous orders of the Court which have addressed the issue at length...." (See Ex. K to Mendola Aff.)  The order also granted the request of

the plaintiff's ex-wife to substitute a new auction house for
Christie's, which—despite Justice Gische's appointment—had
declined to conduct the auction due to the plaintiff's alleged
interference.  Because of the plaintiff's alleged interference,
Justice Silberman ordered the name of the new auction house to
remain sealed.  The order granted the plaintiff's ex-wife and the
new auction house permission to proceed with the auction and sale
of the contents of the safe deposit boxes.

The plaintiff next brought the dispute over the safe deposit
boxes to federal court.  In November 2006, the plaintiff filed two
complaints in the Southern District of New York against numerous
defendants, asserting various causes of action.  Melnitzky v. HSBC
Bank USA, No. 06 Civ. 13526 (JGK) (filed Nov. 28, 2006); Melnitzky
v. Lopreto, No. 06 Civ. 13206 (SHS) (filed Nov. 14, 2006).  The
plaintiff also requested preliminary relief, seeking to enjoin the
auction and sale of the contents of the safe deposit boxes.

Judge Stein, assigned the earlier filed action, dismissed sua
sponte the plaintiff's complaint in its entirety.  See Melntizky
v. Lopreto, No. 06 Civ. 13206 (SHS), 2006 WL 3500016 (S.D.N.Y.
Dec. 4, 2006).  In this, the later filed action, the Court
dismissed the defendant state court judges at the outset on the
grounds of absolute judicial immunity.  See Melntizky v. HSBC,
Bank USA, No. 06 Civ. 13526 (JGK), 2006 WL 3628598 (S.D.N.Y. Dec.
15, 2006).  On December 20, 2006, after hearing argument on the

plaintiff's request for preliminary relief, the Court denied the plaintiff's request for a temporary restraining order and granted the plaintiff leave to file an amended complaint and an amended application for a preliminary injunction. (See Order dated Dec. 21, 2006.)

The plaintiff responded by filing an amended complaint that imported almost all of the defendants that had been dismissed in the action before Judge Stein, along with an amended application for a preliminary injunction and an amended request for a temporary restraining order.  Soon thereafter, the Court dismissed most of the defendants, leaving only the HSBC defendants and Court Officer Duff.  See Melntizky v. HSBC, Bank USA, No. 06 Civ. 13526 (JGK), 2007 WL 195239 (S.D.N.Y. Jan. 24, 2007).  After hearing argument on the plaintiff's amended applications for preliminary relief, the Court again denied the plaintiff's request for a temporary restraining order. (See Order dated Jan. 30, 2007.)

Since this action has been filed, the auction house (the identity of which remains sealed) and the plaintiff's ex-wife have allegedly proceeded with their efforts to secure the contents from the safe deposit boxes and to go forward with the auctions. Indeed, the amended complaint alleges, and HSBC confirms, that the most recent entry into the plaintiff's safe deposit boxes occurred on December 4, 2006.

Against HSBC, the plaintiff complains in substance about the following events:  (1) HSBC's alleged obstruction of his representative during the initial opening of the safe deposit boxes in about April 1998; (2) Justice Tolub's refusal to consider the plaintiff's evidence regarding the contents of the safe deposit boxes; (3) HSBC's alleged participation in the "ex parte" entries into the plaintiff's safe deposit boxes; (4) HSBC's alleged participation in the transfer of assets to the so-called "secret" auction gallery; (5) the denial of the plaintiff's access to the contents of his safe deposit boxes; (6) the denial of the plaintiff's claim for an independent accounting of the contents of the safe deposit boxes; (7) the failure of HSBC to provide the plaintiff with an inventory or invoice detailing the items removed from the safe deposit boxes; and (8) HSBC's alleged misuse of the principles of collateral estoppel and res judicata in the action before Justice Ramos.

The claims against Court Officer Duff arise from events that allegedly transpired during proceedings before Justice Ramos in about March 2005.  (See Am. Compl. at 62.)  The complaint alleges that after a hearing before Justice Ramos, Court Officer Duff treated him disrespectfully and ordered him to leave the courtroom "immediately." (Id. at 50.)  Then, the plaintiff alleges that "before I could say anything more [Court Officer Duff's] f[e]llow officers appeared and likewise proceeded to harass and humiliate

11

me in fro[nt] of the seated public." (Id.)  The plaintiff goes on
to allege that "[t]he same treatment was provided when the senior
officer, a captain arrived and I was physically assault[ed] and
dragged out despite my repeated agreement to leave as soon as I
could gather my papers and belongings." (Id. at 50-51.)  Later in
the complaint, the plaintiff adds factual detail, stating that
Court Officer Duff summoned the group of officers and that those
officers "grabbed [him] physically and dragged [him] out [of the
courtroom] without [his] briefcase and coat." (Id. at 62.)


                                II.

     When presented with motions under both Federal Rule of Civil
Procedure 12(b)(1) to dismiss for lack of subject matter
jurisdiction and Rule 12(b)(6) to dismiss for failure to state a
claim upon which relief can be granted, the Court must first
analyze the Rule 12(b)(1) motion to determine whether the Court
has the subject matter jurisdiction necessary to consider the
merits of the action.  See Rhulen Agency, Inc. v. Alabama Ins.
Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 2000); Abrahams v. App.
Div. of the Sup. Ct., 473 F. Supp. 2d 550 (S.D.N.Y. 2007).

     In defending a motion to dismiss for lack of subject matter
jurisdiction, the plaintiff bears the burden of proving the
Court's jurisdiction by a preponderance of the evidence.  Makarova
v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In

                                12

considering such a motion, the Court generally must accept the material factual allegations in the complaint as true.  See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor.  Id.; Graubart v. Jazz Images, Inc., No. 02 Civ. 4645 (KMK), 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).  Indeed, where jurisdictional facts are disputed, the court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.  See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56.  Kamen, 791 F.2d at 1011.

On a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  Unlike a Rule 12(b)(1) motion, in deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), all reasonable inferences must be drawn in the plaintiff's favor.  Kirch v. Liberty Media Corp., 449 F.3d 388, 392 (2d Cir. 2006); Gant v. Wallingford Bd. of Educ., 69 F.3d 669,

673 (2d Cir. 1995).  The Court's function on a Rule 12(b)(6)
motion to dismiss is "not to weigh the evidence that might be
presented at a trial but merely to determine whether the complaint
itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059,
1067 (2d Cir. 1985).  Therefore, the defendants' motion pursuant
to Rule 12(b)(6) should only be granted if it appears that the
plaintiff can prove no set of facts in support of his claims that
would entitle him to relief.  See Swierkiewicz v. Sorema N.A., 534
U.S. 506, 514 (2002).

While the Court should construe the factual allegations in
the light most favorable to the plaintiff, the Court is not
required to accept legal conclusions asserted in the complaint.
See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d
Cir. 2002).

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the Court may consider documents that are referenced in the
complaint, documents that the plaintiff relied on in bringing suit
and that are either in the plaintiff's possession or that the
plaintiff knew of when bringing suit, or matters of which judicial
notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d
147, 153 (2d Cir. 2002); see also Kavowras v. New York Times Co.,
328 F.3d 50, 57 (2d Cir. 2003); Taylor v. Vermont Dep't of Educ.,
313 F.3d 768, 776 (2d Cir. 2002); Brass v. Am. Film Techs., Inc.,
987 F.2d 142, 150 (2d Cir. 1993); Kramer v. Time Warner, Inc., 937

F.2d 767, 773 (2d Cir. 1991); <u>Cortec Indus., Inc. v. Sum Holding</u>
<u>L.P.</u>, 949 F.2d 42, 47-48 (2d Cir. 1991).

Finally, the pleadings and allegations of a pro se plaintiff
must be construed liberally for the purposes of both Rules
12(b)(1) and 12(b)(6), <u>see</u> <u>McKithen v. Brown</u>, ___F.3d___, 2007 WL
744728, at *4 (2d Cir. Mar. 13, 2007) (quoting <u>Triestman v. Fed.</u>
<u>Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)); <u>Weixel v.</u>
<u>Bd. of Educ. of City of New York</u>, 287 F.3d 138, 145-46 (2d Cir.
2002), and the submissions of a pro se litigant should be
interpreted to "to raise the strongest arguments that they
suggest," <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006)
(quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).


                                III.

Turning first to HSBC's motion to dismiss pursuant to Rule
12(b)(1), HSBC argues that, under the <u>Rooker-Feldman</u> doctrine, the
Court lacks subject matter jurisdiction to adjudicate the
plaintiff's claims against HSBC in this case.  To the extent that
the plaintiff's amended complaint essentially seeks to appeal the
various adverse state court judgments that have been rendered
against him, the Court agrees.

Federal district courts generally lack subject matter
jurisdiction over suits "that are, in substance, appeals from
state-court judgments."  <u>Hoblock v. Albany County Bd. of</u>

                                 15

Elections, 422 F.3d 77, 84 (2d Cir. 2005); Phillips ex rel. Green
v. City of New York, 453 F. Supp. 2d 690, 712–13 (S.D.N.Y. 2006).
Within the statutory structure of the federal judiciary, district
courts are "empowered to exercise original, not appellate,
jurisdiction." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544
U.S. 280, 283 (2005); Phillips, 453 F. Supp. 2d at 713.  The
Supreme Court of the United States has the exclusive authority to
review state court judgments.  See Exxon Mobil, 544 U.S. at 292;
Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644
n.3 (2002).[4]

The doctrine embodying these principles is known as the
Rooker-Feldman doctrine, named for the two Supreme Court in which
these principles were originally applied, Rooker v. Fidelity Trust
Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals
v. Feldman, 460 U.S. 462 (1983).  Recently, in Exxon Mobil, the
Supreme Court clarified the scope of the doctrine, stating that it
"is confined to cases of the kind from which the doctrine acquired
its name:  cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court
review and rejection of those judgments."  544 U.S. at 284.

_____

[4] There is, however, nothing necessary about this structure.  A
notable exception to this jurisdictional rule is the authority Congress
has vested in the federal district courts to exercise federal habeas
review of certain state court judgments pursuant to 28 U.S.C. § 2254(a).
See Exxon Mobil, 544 U.S. at 292 n.8.

Contrary to the understanding of some lower courts prior to the Exxon Mobil decision, see, e.g., Moccio v. New York State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir. 1996), the Rooker-Feldman doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Exxon Mobil, 544 U.S. at 284.

Following Exxon Mobil, the Second Circuit Court of Appeals has articulated the following four requirements for the application of the Rooker-Feldman doctrine:  (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  See Hoblock, 422 F.3d at 85 (alterations omitted); see also McKithen v. Brown, ___F.3d___, 2007 WL 744728, at *5 (2d Cir. Mar. 13, 2007); Phillips, 453 F. Supp. 2d at 713.  If all of these conditions are met, the district court lacks subject matter jurisdiction over the claim.

The plaintiff's amended complaint is hardly a model of clarity.  Nonetheless, it is apparent that many of the claims asserted against HSBC seek to have this Court review and reject the past adverse judgments of the New York State courts, which

this Court is powerless to do under the Rooker-Feldman doctrine.
Specifically, the Court lacks subject matter jurisdiction over the
plaintiff's claims that the judgment entered by Justice Tolub and
affirmed by the Appellate Division violated his rights to due
process and equal protection of the laws.  To the extent that the
plaintiff alleges that the subsequent judgments that affirmed or
relied upon Justice Tolub's judgment violated his federal
constitutional rights, the Court lacks jurisdiction to consider
those claims as well.  Similarly, the Court lacks jurisdiction
over any claim that the state courts violated his federal
constitutional rights by entering judgments against him in
reliance upon the doctrines of res judicata and collateral
estoppel, or that HSBC violated his rights by conspiring with the
state courts to apply these doctrines.

     As to these claims, the requirements for the application of
the Rooker-Feldman doctrine are plainly satisfied.  First, the
federal plaintiff is a state court loser.  Second, the plaintiff
alleges that these state court judgments violated his federal
constitutional rights and thus caused him injury.  Third, the
plaintiff invites this Court to review and reject these state
court judgments.  Finally, these state court judgments were
rendered prior to the commencement of this action.[5]

---

     [5] To the extent that the plaintiff has tried to allege that "he was
denied due process in the course of, and not as a result of, the judicial
proceedings that led to the state court judgment," the Court rejects that
argument.  See Bernstein v. New York, No. 06 Civ. 5681 (SAS), 2007 WL

In addition, many of the plaintiff's remaining claims against HSBC, while ostensibly directed at third-party conduct unrelated to any state court judgments, in fact seek to challenge the various judgments of the state courts.  The plaintiff raises various challenges to HSBC's procedures in conducting the inventory of the safe deposit boxes.  However, the procedures for accessing and inventorying the plaintiff's safe deposit boxes were detailed and directed by the state court orders.  As the Second Circuit Court of Appeals has explained, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  Hoblock, 422 F.3d at 88.  Thus, to the extent that the plaintiff alleges that HSBC violated his federal constitutional rights based on procedures that HSBC was required to follow in light of the state court orders, these injuries were produced by the state court orders for Rooker-Feldman purposes.  The most recent order governing the inventory of the safe deposit boxes, which the plaintiff seeks to challenge, was issued by Justice Silberman on

---

438169, at *6 (S.D.N.Y. Feb. 9, 2007).  As Judge Scheindlin has explained, such reasoning is "sheer sophistry" because if the Court "were to declare that [the plaintiff] was denied due process during the state court proceedings, it would effectively be reversing a judgment of the state court."  Id.  The plaintiff was afforded the opportunity to present his claims to the state courts and they were rejected.  The plaintiff is challenging the very judgments that rejected his claims.

June 7, 2006, well prior to the commencement of this action in November 2006.[6]

Thus, to the extent that the plaintiff seeks to challenge HSBC's inventory procedures, which were produced in compliance with the state court orders, the Court lacks subject matter jurisdiction to consider these claims.  Again, all the requirements for the application of the Rooker-Feldman doctrine are satisfied:  (1) the plaintiff is a state court loser; (2) the plaintiff alleges injuries caused by the state court judgments; (3) the plaintiff invites this court to review and reject those judgments; and (4) those judgments were issued prior to the commencement of this action.

Also, to the extent that the plaintiff seeks to enjoin ongoing proceedings arising from the plaintiff's matrimonial

_____

[6] That the plaintiff's matrimonial action remains ongoing does not alter the fact that the plaintiff seeks what is in essence appellate review of Justice Silberman's June 2006 order, which this Court is powerless to entertain.  "Rooker-Feldman applies where the state proceeding has ended with respect to the issues that the federal plaintiff seeks to have reviewed in federal court, even if other matters remain to be litigated."  Phillips, 453 F. Supp. 2d at 714 (quoting Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 26 (1st Cir. 2005)).  In addition, the fact that a federal plaintiff may still have time to appeal the challenged state court order or judgment within the state system does not affect the Rooker-Feldman analysis.  See, e.g., Bush v. Danziger, 2006 WL 3019572, at *6 (S.D.N.Y. Oct. 23, 2006).  A federal district court, as a court of original jurisdiction, is as powerless to consider appeals arising from challenges to the various interlocutory rulings, decisions, orders, and judgments of a state's lower courts as it is powerless to consider appeals from a final judgment affirmed by the highest court of the state.  Thus, neither the timing of Justice Silberman's order nor its interlocutory nature alters the conclusion that this Court lacks jurisdiction to consider a direct challenge to that order.  See Melnitzky, 2006 WL 3500016, at *3.

action, the Court will abstain from interfering with the ongoing
state court proceedings for the reasons stated in the Court's
January 24, 2007 Memorandum Opinion.  See Melnitzky, 2007 WL
195239, at *2.

However, not all of the plaintiff's claims against HSBC are
barred by the Rooker-Feldman doctrine.  The plaintiff's claims
that HSBC somehow violated his federal constitutional rights by
failing to comply with the state courts orders, for example, by
obstructing his representative at the 1998 inventory of the safe
deposit boxes, are not barred by the Rooker-Feldman doctrine.
Where the plaintiff's complaint is predicated on HSBC's failure to
comply with a state court order, the plaintiff does not seek to
have the Court review and reject the state court judgment.  On the
contrary, in relying upon the order in attempting to establish a
claim, the plaintiff effectively seeks to have the order affirmed,
at least as to the portion on which he relies.  Therefore, such
claims are not barred by the Rooker-Feldman doctrine.[7]

Finally, the Court has subject matter jurisdiction to
consider the plaintiff's claim against Court Officer Duff.
Nothing suggests that Court Officer Duff's conduct was produced by
any state court judgment.  Therefore, the plaintiff's claims

---

[7] Likewise, to the extent that the plaintiff has successfully
alleged any claim against HSBC based on HSBC's acts or omissions with
respect to the inventory which are wholly independent from the state
court orders, those acts or omissions cannot be said to have been
produced by the state court orders and thus also are not barred by the
Rooker-Feldman doctrine.

against Court Officer Duff do not implicate the Rooker-Feldman doctrine.

## IV.

Having resolved the issue of subject matter jurisdiction, the Court now turns to HSBC's motion to dismiss pursuant to Rule 12(b)(6).  For the reasons that follow, the plaintiff's claims against HSBC pursuant to 42 U.S.C. §§ 1983 and 1985(3) must be dismissed.

First, the plaintiff has failed to allege a necessary elements of his § 1983 claim, that is, that HSBC acted under color of state law.  HSBC, and the individual employees of HSBC, are private actors.  A private actor may be liable under § 1983 only if there is a sufficiently "close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Brentwood Academy v. Tenn. Secondary School Athletic Ass'n, 531 U.S. 288, 295 (2001) (internal quotation marks omitted).  However, conclusory allegations that such joint activity has occurred will not suffice.  See, e.g., Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992); Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).  The plaintiff offers no factual basis for his broad and conclusory assertion that HSBC conspired and consorted with state authorities and other private persons to violate the plaintiff's

federal constitutional rights.  These conclusory allegations are
insufficient to establish that HSBC acted under color of state
law.

In addition, assuming the Rooker-Feldman doctrine did not bar
the plaintiff's claims against HSBC for complying with the various
orders of the state courts, the mere compliance with a court order
does not constitute action under color of state law.  See, e.g.,
Lockhart v. Hoenstine, 411 F.3d 455 (2d Cir. 1969); Jarvis v.
Roberts, 489 F. Supp. 924 (W.D. Tex. 1980).  With respect to those
claims arising form HSBC's alleged non-compliance with the court
orders, which survived the Rooker-Feldman analysis, HSBC certainly
cannot be said to have acted under color of state law.[8]

Even construing the plaintiff's pro se complaint liberally,
the plaintiff has failed to allege a necessary element of his
§ 1983 claim against HSBC, that HSBC acted under color of state
law, and therefore this claim against the HSBC defendants must be
dismissed.

The plaintiff's conspiracy claim pursuant to 42 U.S.C.
§ 1985(3) also must be dismissed.  The elements of a § 1985(3)
claim are:  "(1) a conspiracy; (2) for the purpose of depriving,
either directly or indirectly, any person or class of persons of

---

[8] Furthermore, a three-year statute of limitations applies to
§ 1983 claims in New York.  See Owens v. Okure, 488 U.S. 235, 251 (1989).
Many of the plaintiff's allegations against HSBC are thus time-barred,
including his claims arising from the initial entries into his safe
deposit boxes and HSBC's alleged obstruction of the plaintiff's
representative at the initial inventory.

equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of a citizen of the United States." Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000); Sullivan v. Stein, No. 03 Civ. 1203 (MRK), 2004 WL 1179351, at *3 (D. Conn. May 21, 2004). In addition, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  The plaintiff maintains that HSBC, together with others, conspired to discriminate against him based on his status as a pro se litigant.  However, the plaintiff offers no authority for his claim that his status as a pro se litigant is a sufficient class for the purposes of a § 1985(3) conspiracy.  More importantly, the plaintiff has failed to plead any facts to substantiate his conclusory allegations of a conspiracy animated by his status as a pro se litigant.  Thus, the plaintiff has also failed to plead a claim under § 1985(3).  See, e.g., Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999) (stating that "even if [the plaintiff's] contention [that pro se litigants are a protected class] were granted, the claim would fail, because his allegation that the defendants discriminated against him on the basis of his pro se status is as conclusory as his claim that the officers were motivated by racial animus"); Soto v. Schembri, 960 F. Supp. 751, 760 (S.D.N.Y. 1997) (dismissing § 1985

conspiracy claim where the plaintiffs failed to allege the elements of conspiracy with particularity).

Finally, most if not all of the plaintiff's claims have already been litigated in the New York State courts and are thus precluded under the doctrines of res judicata (or claim preclusion) and collateral estoppel (or issue preclusion).  See Cieszkowska v. Gray Line New York, 295 F.3d 204, 205 (2d Cir. 2002).  Federal courts give the same preclusive effect to state court judgments as the state court would give, "regardless of whether the issues in the federal action had actually been litigated in a prior state action."  Gargiul v. Tompkins, 790 F.2d 265, 269 (2d Cir. 1986); see also 28 U.S.C. § 1738.  Under New York claim preclusion law, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  O'Brien v. City of Syracuse, 429 N.E.2d 1158, 1159 (N.Y. 1981).  Under New York issue preclusion law, a party may not relitigate an issue if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  Hoblock, 422 F.3d at 94 (internal quotation marks omitted).  The plaintiff's claims against HSBC, many of which raise identical issues to those that have already

been decided after the plaintiff had a full and fair opportunity
to litigate those issues in his matrimonial action, the various
other lawsuits he filed in the state courts related to the
matrimonial action, including his lawsuit against HSBC, and the
case before Judge Stein, are precluded under principles of res
judicata and collateral estoppel.

For all of these reasons, the plaintiff has failed to allege
any valid federal claim against any of the HSBC defendants.


**V.**

The plaintiff's claims against Court Officer Duff must also
be dismissed.  The plaintiff alleges that around March 2005 Court
Officer Duff mistreated and harassed the plaintiff and that other
officers summoned by Officer Duff assaulted the plaintiff after a
hearing before Justice Ramos.

The plaintiff's federal claims against Court Officer Duff are
not altogether clear.  The plaintiff first appears to allege that
Court Officer Duff's actions somehow violated his right to equal
protection of the laws based on his status as a pro se litigant.
However, even assuming the plaintiff could assert a valid equal
protection claim based on his status as a pro se litigant, the
plaintiff has asserted no facts from which any reasonable
inference could be drawn to support the plaintiff's conclusory
allegations that Court Officer Duff's actions were motivated by

the plaintiff's status as a pro se litigant.  Cf. Posr, 180 F.3d at 419.  Therefore, this claim fails.

Second, the plaintiff's allegations against Court Officer Duff can be liberally construed as an effort to assert a claim pursuant to 42 U.S.C. § 1983 for the use of unreasonable excessive force in violation of the Fourth Amendment to the United States Constitution.  See Graham v. Connor, 490 U.S. 386, 394 (1989).  In analyzing this claim, the Court must determine whether the actions of the officer were objectively reasonable in light of the totality of the facts and circumstances surrounding the seizure. See Bowles v. New York, 37 F. Supp. 2d 608, 612 (S.D.N.Y. 1999). However, generally, "mere verbal abuse, and even vile language, does not give rise to a cognizable claim under 42 U.S.C. § 1983." Beal v. City of New York, No. 92 Civ. 0718 (KMW), 1994 WL 163954, at *6 (S.D.N.Y. April 22, 1994).  In addition, "[n]ot every push or shove... violates the Fourth Amendment."  Graham, 490 U.S. at 396 (citation omitted).

The plaintiff claims that Court Officer Duff treated him disrespectfully and ordered him to leave the courtroom "immediately."  In addition, the plaintiff alleges that Court Officer Duff summoned a group of officers who grabbed him and physically removed him from the courtroom before he had an opportunity to gather his briefcase and coat.  The plaintiff does not allege that it was Officer Duff who actually assaulted him.

The plaintiff does not assert that any of the actions of any of the officers caused him any injuries.  Accepting these allegations as true and drawing all inferences in favor of the plaintiff, the plaintiff has failed to allege that Officer Duff's actions constituted the use of unreasonable excessive force.  See, e.g., Bowles, 37 F. Supp. 2d at 612 (collecting cases).  Therefore, this claim must also be dismissed.  However, because the plaintiff is proceeding pro se and because the plaintiff may yet be able to plead sufficient facts to establish these claims, the Court dismisses the claims against Court Officer Duff without prejudice.

## VI.

Having dismissed all of the plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims.  See 28 U.S.C. § 1367(c)(3); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 304-06 (2d Cir. 2003).  Therefore, any remaining state law claims against the HSBC defendants or Court Officer Duff are dismissed without prejudice.

## VII.

The HSBC defendants seek an order enjoining the plaintiff from filing further actions in the Southern District of New York without prior leave of court.  In support of this application,

HSBC points to the plaintiff's extensive litigation history, and the injunctions that have been issued against the plaintiff in state court.  Moreover, the plaintiff's brief history in federal court is troubling.  The plaintiff, for example, simply re-filed numerous claims in this Court after they had been dismissed by Judge Stein.  Many of the claims asserted in this case have already been rejected in state court and their reassertion has caused needless expense, at least to the HSBC defendants.  The plaintiff should be aware that the federal courts, like the state courts, have the authority to enjoin abusive litigants from filing further actions without prior leave of court.  <u>See</u> <u>Lau v.</u> <u>Meddaugh</u>, 229 F.3d 121, 123 (2d Cir. 2000).  Here, however, the plaintiff's filings in federal court have not reached the level of abusiveness that would warrant this Court issuing an order to the plaintiff to show cause why such an injunction should not issue. HSBC's request to enjoin the plaintiff from filing further actions without prior leave of court is therefore denied.

<u>**CONCLUSION**</u>

For the reasons stated above, the HSBC defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is **granted**.  The HSBC defendants' request for an injunction barring the plaintiff from filing further actions in

the Southern District of New York without prior leave of court is
**denied**.

The claims against defendant Court Officer Duff are **dismissed
without prejudice**.

Because the plaintiff's amended complaint has now been
dismissed in its entirety against all defendants, the plaintiff's
cross-motion for summary judgment and amended application for a
preliminary injunction are both **denied**.  In addition, to the
extent that the plaintiff seeks reconsideration of the Court's
prior orders of dismissal, that request for reconsideration is
**denied**.

The Court has considered all of the arguments raised by the
parties.  To the extent not specifically addressed herein, the
arguments are either moot or without merit.  The Clerk is directed
to enter judgment and to close this case.

SO ORDERED.

Dated:    New York, New York
          April _17_, 2007

                                        John G. Koeltl
                                   United States District Judge

30